IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPHINE N. AKAH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-13-2415 |
| | § | |
| CAROLYN COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Defendant's Cross-Motion for Summary Judgment (Doc. 11) and Plaintiff's Motion for Summary Judgment (Doc. 12). The court has considered the motions, the responses, the administrative record and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) and for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claims for disability benefits under Title II of the Social Security Act ("the Act").

---

[1]    The parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. 636(c).  Docs. 8, 9 & 10.

## A.  Procedural History

Plaintiff was born on August 27, 1957, and was forty-nine years old at the alleged onset of her disability.[2]  She has a high school diploma and past employment as a gas station cashier and certified nurse's aide.[3]

Plaintiff applied for disability insurance benefits on April 14, 2011, claiming an inability to work based on back and knee pain and high blood pressure.[4]  In her application, Plaintiff indicated that she became unable to work due to her disability on March 27, 2007.[5]  Her eligibility for disability benefits expired on December 31, 2007, thus the court's review concerns the period March 27, 2007, through December 31, 2007, ("the relevant period").

The claim was initially denied on May 25, 2011, and later on reconsideration on July 6, 2011.[6]  Plaintiff requested a hearing before an administrative law judge ("ALJ").[7]  The hearing before the ALJ was held on February 9, 2012 in Houston.[8]

---

[2]    Tr. of the Admin. Proceedings ("Tr.") 141.

[3]    Tr. 156.

[4]    Tr. 141, 155.  According to the ALJ, a March 2007 application for disability was denied on September 19, 2007, but not appealed.  Tr. 30.  The present application uses a last-date-worked of March 27, 2007, because an ALJ denied another application for disability benefits on March 26, 2007.  Id.

[5]    Tr. 155. In fact, Plaintiff has not worked since 2002 when she suffered an on-the-job injury while working as a nurse's aide.  Tr. 37.

[6]    Tr. 71-75, 77-79.

[7]    Tr. 81.

[8]    Tr. 22.

B.  <u>Medical History</u>

There are scant medical records in the administrative record. According to Plaintiff's attorney, medical records from both Bobby Pervez, M.D., ("Dr. Pervez") and James Ghadially, M.D., ("Dr. Ghadially") were destroyed by Hurricane Ike flooding and are no longer available.[9]  The relevance of these lost documents is questionable as the record suggests that Plaintiff saw Dr. Pervez in 2004 and Dr. Ghadially from 2003 to 2005.[10]  After the hearing before the ALJ, Plaintiff submitted records documenting a 2003 radiology report and treatment by a chiropractor in 2006.[11]  Those records show the following.

On August 27, 2003, Plaintiff underwent a computerized tomography ("CT") scan of her lumbar spine after complaining of lower back pain to Dr. Ghadially.[12]  The radiologist found that there was no herniation or remarkable foraminal narrowing at L1-2 or L2-3.[13]  There was mild bilateral foraminal narrowing and a three-millimeter mild posterior protrusion at L3-4.[14]  At L4-5, there was a "broad-based posterior protrusion, mild central canal

---

[9]     Tr. 25-29, 133.

[10]    Tr. 159-60, 227-28.

[11]    Tr. 226.

[12]    Tr. 228.

[13]    <u>Id.</u>

[14]    <u>Id.</u>

stenosis, and moderate bilateral foraminal narrowing."[15]  The L-5 nerve root sleeves were noted to be amputated bilaterally, and the S1 nerve root sleeves were unfilled bilaterally.[16]  There was marked bilateral foraminal narrowing with compression of the L5 nerve root sleeves/dorsal root ganglia, bilaterally.[17]

Plaintiff was treated at the Elite Chiropractic and Rehab Health Clinic by Kunle Adeyinka, D.C., ("Dr. Adeyinka") between June and December 2006.[18]  The records reflect that Plaintiff complained of constant lower back pain during her first three visits to Dr. Adeyinka,[19] but, by mid-July, reported feeling "slightly better" with an increased range of motion.[20]

At the end of July 2006, Plaintiff reported burning, tingling pain on her left side and pain in her lower back.[21]  Plaintiff continued to report moderate-to-severe pain that increased with prolonged standing in late July.[22]  On August 21, 2006, Plaintiff stated that she felt better than her last visit.[23]  By late August,

---

[15]     Id.

[16]     Id.

[17]     Id.

[18]     Tr. 229.

[19]     Tr. 252-54.

[20]     Tr. 251.

[21]     Tr. 250.

[22]     Tr. 249.

[23]     Tr. 246.

Plaintiff reported that her pain was "intermittent" but increased with any type of bending.[24]  On September 13, 2006, Plaintiff stated that she "continue[d] to feel better after each treatment.[25]  On September 21, 2006, Plaintiff noted improvement in her back pain.[26]

Two months passed with no chiropractic treatment, but on November 20, 2006, Plaintiff returned to Dr. Adeyinka, complaining of increased pain in her lumbar spine.[27]  On December 4, 2006, Plaintiff stated that she obtained some relief from the treatment the week before but that the pain had returned.[28]

On December 7, 2006, Dr. Adeyinka completed a form for the Texas Department of Insurance, Division of Workers' Compensation that stated that Plaintiff's "injury is not pre-existing and degenerative in origin but caused by a fracture which she sustained when trying to catch the patient from falling."[29]

Plaintiff returned to Dr. Adeyinka on December 8, 2006, and reported that her back pain was better but that she was suffering from right knee pain.[30]  On December 12, 15, and 18, 2006, Plaintiff

---

[24]    Tr. 245.

[25]    Tr. 243.

[26]    Tr. 242.

[27]    Tr. 241.

[28]    Tr. 239.

[29]    Tr. 237.

[30]    Tr. 235.

reported back and knee pain.[31]  On December 22, 2006, Plaintiff stated that the pain was "slightly relieved."[32]  She did not seek chiropractic treatment after that date.

Plaintiff saw no treating physician during the relevant period but did submit to a consultative examination in September 2007.  On September 5, 2007, Daryl Daniel, M.D., ("Dr. Daniel") conducted a consultative examination of Plaintiff in connection with her claim for disability benefits.[33]  Dr. Daniel reported that Plaintiff was five feet, two inches tall and weighed 257 pounds.[34]  He observed that Plaintiff had a methodical gait and difficulty rising from a seated position and sitting from a supine position.[35]  Plaintiff voiced pain in her right knee upon movement, but Dr. Daniel noted no effusion, bony or tissue destruction, crepitance, joint instability, redness or swelling.[36]  Plaintiff had normal finger control and dexterous control with no evidence of atrophy.[37]

Dr. Daniel found no evidence of pathological curvatures, spasm or misalignment of Plaintiff's back.[38]  Dr. Daniel commented that

---

[31]     Tr. 232-34.

[32]     Tr. 231.

[33]     Tr. 203.

[34]     Tr. 204.

[35]     Id.

[36]     Id.

[37]     Id.

[38]     Id.

Plaintiff had "evidence of back pain likely as a result of the disc disease seen on the radiographic studies" which would cause "a poor quality of life" and "some occasional incapacity."[39]  He recommended that Plaintiff use a cane when standing more than thirty minutes, that she walk, stand, bend, stoop or squat in short periods of time, and that she not lift more than fifteen pounds.[40]

In connection with Dr. Daniel's examination, Plaintiff underwent a lumbar x-ray.[41]  The radiologist found osteophytes at multiple levels, a grade I spondylolisthesis at L5-S1, approximately eight to nine millimeters, and narrowing of the interspace at that level.[42]  The remaining vertebral interspaces appeared normal.[43]

On September 17, 2007, James Wright, M.D., ("Dr. Wright") completed a Physical Residual Functional Capacity ("RFC") Assessment based on Dr. Daniel's examination.[44]  Dr. Wright found that Plaintiff was able to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday.[45]

---

[39]   Id.

[40]   Id.

[41]   Tr. 205.

[42]   Id.

[43]   Id.

[44]   Tr. 218-25.

[45]   Tr. 219.

Dr. Wright stated that Plaintiff's claimed limitations were not wholly supported by the records.[46]

On November 26, 2007, Frederick Cremona, M.D., ("Dr. Cremona") reviewed Dr. Wright's Physical RFC assessment.[47]  Dr. Cremona reported that Dr. Wright's assessment correctly noted pain associated with full flexion and extension of the right knee but also showed that Plaintiff could bend to eighty degrees.[48]  Dr. Cremona concurred with Dr. Wright's opinion that Plaintiff retained a light RFC.[49]

On June 29, 2011, John Durfor, M.D., ("Dr. Durfor") completed a Physical RFC Assessment after review of the August 2003 myelogram, Dr. Daniel's report and the September 2007 x-ray of Plantiff's lumbar spine.[50]  Consistent with Dr. Wright's opinion, Dr. Durfor found that Plaintiff was able to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday.[51]  He stated that the alleged severity and limiting effects of Plaintiff's impairments were not fully supported by his

---

[46]    Tr. 223.

[47]    Tr. 207.

[48]    Id.

[49]    Id.

[50]    Tr. 217.

[51]    Id.

examination of the records.[52]

## C.   Hearing Testimony

On February 9, 2012, a hearing was held before an ALJ in Houston.[53]   Plaintiff and Rosalind Lloyd, a vocational expert ("VE"), testified at the hearing.[54]   Plaintiff was represented by counsel at the hearing.[55]

Plaintiff explained that she did not seek medical treatment during the relevant period through the present because she had no insurance and her husband would not support her financially, other than to provide her a residence.[56]   She testified that she was unable to obtain assistance as an indigent because her husband refused to provide her with proof of his income.[57]

Plaintiff testified that from 1990 to 2000, she worked as a cashier at a gas station.[58]   Plaintiff was employed between 2000 and 2002 as a nurse's aide.[59]   Although Plaintiff stated that she had not worked since 2002, she admitted that she had supplemented her

---

[52]   Tr. 215.

[53]   Tr. 24.

[54]   Id.

[55]   Id.

[56]   Tr. 47.

[57]   Tr. 49.

[58]   Tr. 39.

[59]   Tr. 39-40.

income since that time by selling home-cooked food.[60]  She estimated that she worked approximately five hours a day cooking food.[61] Plaintiff worked as a babysitter after 2002, but stated that she stopped that employment because stooping and bending exacerbated her back pain.[62]

Plaintiff explained that she suffered from back pain that required her to sit for twenty to thirty minutes at a time.[63]  On other occasions, standing or walking relieved the back pain, but over-the-counter medication did not.[64]  Plaintiff also reported that she had suffered from knee pain for the past three years.[65] Plaintiff testified that she had been obese for years, including during the relevant time period.[66]

Plaintiff stated that she was able to do laundry and wash dishes but not sweep.[67]  She reported a consistent pattern where she would have two consecutive bad days, followed by three good days.[68]

The VE testified that Plaintiff's employment at the gas station

---

[60]    Tr. 43.

[61]    Id.

[62]    Tr. 53.

[63]    Tr. 50.

[64]    Tr. 55.

[65]    Tr. 50, 52.

[66]    Tr. 36, 51.

[67]    Tr. 56.

[68]    Tr. 57.

was better characterized as "cashier, convenience store" and was light, unskilled work.[69] Plaintiff employment as a nurse's aide was medium, semi-skilled work, according to the VE.[70] The VE testified that Plaintiff's skills would transfer to a number of sedentary jobs and that Plaintiff had the RFC to be a sedentary unskilled worker, a document proofreader, and a call-out operator.[71]

The VE stated that if Plaintiff were required to take two or more additional breaks per day due to discomfort, she would be precluded from full-time employment.[72]

**D.  ALJ's Decision**

On May 22, 2012, the ALJ issued an unfavorable decision.[73] The ALJ found that Plaintiff was insured through December 31, 2007, and, therefore, had to establish that she was disabled on or before that date to qualify for disability benefits.[74] The ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period.[75] The ALJ next determined that Plaintiff had the medically determinable impairments of degenerative disc disease of

---

[69]    Tr. 41.

[70]    Tr. 42.

[71]    Tr. 60.

[72]    Tr. 59-60.

[73]    Tr. 11-17.

[74]    Tr. 11.

[75]    Tr. 13.

the lumbar spine, grade 1 spondylolithesis, bilateral knee pain, obesity and hypertension.[76]   The ALJ found that none of these impairments, either singly or in combination, significantly limited Plaintiff's ability to perform work-related activities for twelve consecutive months.[77]   Thus, the ALJ disposed of the case at step two of the disability analysis.

In support of his opinion, the ALJ found that the record contained no evidence of medical treatment during the relevant period.[78]   Also, he noted there was little evidence of medical treatment prior to the alleged onset date; the only evidence being a 2003 CT scan and chiropractic manipulations of the lower back over a six-month period in 2006.[79]

The ALJ discussed the consultative examination by Dr. Daniel in September 2007 wherein Dr. Daniel recorded that Plaintiff complained of lower back pain, had not had back surgery and had received no back injections since 2002.[80]   Dr. Daniel found that Plaintiff did not need an assistive device and was able to perform most activities of daily living, including cooking, cleaning,

---

[76]   Tr. 13.

[77]   Id.

[78]   Tr. 15.

[79]   Id.

[80]   Tr. 16.

grocery shopping and laundry.[81]   The ALJ credited Dr. Daniel's report that Plaintiff was able to bend to eighty degrees, had full range of motion in her upper and lower extremities, with a report of pain associated with full flexion/extension of the right leg and no sensory, motor or reflex loss.[82]  Based on Dr. Daniel's findings, the ALJ determined that Plaintiff exhibited no respiratory, cardiovascular, musculoskeletal or neurological deficits associated with obesity.[83]

Although Dr. Daniel opined that Plaintiff's disc disease caused her a "poor quality of life," "occasional incapacity," and limited Plaintiff to lifting no more than fifteen pounds and walking, standing, stooping, sitting and bending for short periods of time, the ALJ found that these opinions were not supported by the objective medical findings of the consultative examination.[84]  It was also significant to the ALJ that, while Plaintiff ambulated slowly, she did not require the use of an assistive device and that Dr. Cremona, upon reviewing Dr. Daniel's report, found that Plaintiff was able to work at the light level of exertion.[85]

The ALJ discounted the 2011 opinions of two medical consultants

---

[81]     Id.

[82]     Id.

[83]     Id.

[84]     Tr. 16-17.

[85]     Tr. 17.

because they were not based on objective evidence related to the relevant period.[86]   The ALJ concluded that Plaintiff was not under a disability through the date last insured, December 31, 2007.[87]

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.   <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

## A.   <u>Legal Standard</u>

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act.   <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991).   Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994).   The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); <u>see also</u> <u>Jones v. Heckler</u>, 702

---

[86]     <u>Id.</u>

[87]     <u>Id.</u>

14

F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial
> gainful activity, will not be found to be disabled no
> matter what the medical findings are; (2) a claimant will
> not be found to be disabled unless she has a "severe
> impairment;" (3) a claimant whose impairment meets or is
> equivalent to an impairment listed in Appendix 1 of the
> regulations will be considered disabled without the need
> to consider vocational factors; (4) a claimant who is
> capable of performing work that she has done in the past
> must be found "not disabled;" and (5) if the claimant is
> unable to perform her previous work as a result of her
> impairment, then factors such as her age, education, past
> work experience, and [RFC] must be considered to
> determine whether she can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999).  If the Commissioner satisfies her step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

**B.  Substantial Evidence**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  It is "something more than a scintilla but less than a preponderance." Id.  The Commissioner has the responsibility of deciding any conflict in the evidence.  Id.  If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.  42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.  Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits, specifically arguing that the ALJ: (1) erred in finding that Plaintiff's degenerative disc disease of the

lumbar spine was not "severe" at Step Two; (2) violated Social Security Ruling ("SSR") 96-6p by not obtaining an updated medical expert opinion on medical equivalence; (3) failed to properly develop the case; (4) failed to consult with a medical expert in interpreting the medical evidence; (5) failed to consider Plaintiff's non-exertional impairments; and (6) improperly substituted his own opinions for that of a medical expert.

Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

## A.   The ALJ's Step-Two Analysis

Plaintiff complains that the ALJ erred at step two of the Bowling analysis by failing to find Plaintiff's degenerative lumbar disc disease, grade 1 spondylolisthesis, knee pain, obesity, and hypertension to be "severe" impairments.  In Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), the court stated that "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

Plaintiff argues that it "is to defy both common sense and the clear evidence of record" that Plaintiff's impairments imposed no more than a minimal effect on her ability to work in light of objective evidence of degenerative changes in the lumbar spine, grade 1 spondylolisthesis, obesity, and bilateral knee pain.

17

However, it is not the court's job to scour the record to determine if there is evidence that Plaintiff's impairments rose to the level of "severe," rather, the court must examine the record to determine if there is substantial evidence to support the ALJ's determination that Plaintiff's impairments were not severe.

The administrative record documents that in 2003 Plaintiff had a broad-based posterior protrusion and moderate foraminal narrowing at L4-5, amputated nerve root sleeves at L-5, empty nerve root sleeves at S1 and marked bilateral narrowing with L-5 nerve root compression.[88]   However, this evidence predates the relevant period and does not provide insight into the last nine months of 2007 when contemporaneous information found Plaintiff had no nerve damage and was able to walk without an assistive device.[89]

The record also documents six months of chiropractic treatments from June through December 2006, wherein Plaintiff complained about severe lower back pain and shooting pains in her leg.[90]   Again, these records pre-dated the relevant period and neither the ALJ nor the court can assume that Plaintiff's lower back pain continued past December 2006 and imposed more than a minimal effect on her ability to work after that time.

The court understands that medical records of Drs. Pervez and

---

[88]   Tr. 228

[89]   Tr. 204.

[90]   Tr. 230-54.

Ghadially were destroyed through no fault of Plaintiff.  However, the administrative records makes clear that those records dated from 2003-2005 for Dr. Ghadially and 2004 for Dr. Pervez.[91]  The missing records significantly predate the relevant period and would have no bearing on whether Plaintiff was suffering from a severe impairment in 2007.

Only two documents exist from the relevant period.  A September 2007 lumbar x-ray found a grade 1 spondylolisthesis at L5-S1 of approximately eight to nine millimeters and narrowing of the spinal interspace at that level.[92]  However, without evidence that the spondylolisthesis and narrowing of the spinal interspace resulted in an impairment that caused more than a minimal effect on Plaintiff's ability to work, the x-ray is not evidence from which the ALJ could have concluded that Plaintiff's spondylolisthesis and lower back pain were severe impairments.

Plaintiff was examined by one physician during the relevant period in connection with an earlier application for benefits.  Dr. Daniel noted that Plaintiff complained of back pain, had a very slow and methodical gait, difficulty rising from a seated position and pain in her right knee upon full flexion and extension.[93]  However, he also noted that Plaintiff was able to touch her toes, walk for

---

[91]     Tr. 190-91.

[92]     Tr. 205.

[93]     Tr. 204.

about one mile and stand for thirty minutes.[94]  Plaintiff was able
to walk without a cane, crutch or walker, and she stated that she
was able to do most of the activities of daily living, such as
cooking, cleaning, grocery shopping and laundry.[95]  She stated that
sometimes her back pain was so severe that she was not able to walk
and took Motrin and over-the-counter pain medication to address the
pain.  Dr. Daniel observed Plaintiff to be in "no obvious distress"
during the examination.[96]

Plaintiff bears the burden of proof to show that she suffered
from a "severe" impairment lasting at least twelve months that
prevents her from engaging in substantial gainful activity.  Bowen
v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The mere presence of an
impairment or combination of impairments will not support a
conclusion that they significantly limited or will limit Plaintiff's
ability to perform work-related activities for twelve consecutive
months.  Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)(citing
Demandre v. Califano, 591 F.2d 1088 (5th Cir. 1979)).

Plaintiff was found to be not disabled for a period ending
March 26, 2007, and failed to appeal that determination.  She did
not seek medical treatment during the relevant period, or for a
significant time thereafter.  Plaintiff bears the burden at this

---

[94]     Tr. 203.

[95]     Id.

[96]     Tr. 204.

step of the analysis.  The ALJ outlined in detail his reasoning for determining at step two that Plaintiff did not suffer from a severe impairment and the court finds that it is supported by substantial evidence.

**B.  Plaintiff's remaining arguments**

Plaintiff also complains that the ALJ failed to obtain an updated medical expert opinion as required by SSR 96-6p, failed to properly develop the case, failed to consult with a medical expert, failed to consider Plaintiff's non-exertional impairments and improperly substituted his own opinions for that of a medical expert.  As these are related arguments, the court considers them together.

Plaintiff correctly points out that SSR 96-6p states that an ALJ must obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  Thus, the tipping point is whether the additional evidence might change the original finding of the state agency expert.

In the present case, the only additional medical evidence submitted without review from a medical expert were chiropractic records from 2006 and a 2003 CT scan of the lumbar spine.  This

evidence predated the September 2007 consultative examination and, as it did not relate to the time under consideration, the ALJ did not err by failing to obtain a medical expert's review of the material to determine equivalence to a Listing at step three of the required analysis.  The case was correctly decided at step two for the reasons explained above.  And, as the case was decided without reaching a decision on medical equivalence, the ALJ did not substitute his judgment for that of a medical expert.

Plaintiff also complains that SSR 82-20 requires the ALJ to obtain a medical expert's opinion concerning the onset date of a disabling impairment when precise information is not available. Plaintiff argues that a medical expert was necessary to assist the ALJ in determining Plaintiff's level of functioning as of her date last insured.

However, several medical experts reviewed Dr. Daniel's report and made determinations of Plaintiff's level of functioning as of the date last insured.  For example, in 2007, Dr. Wright reviewed Dr. Daniel's report and found that Plaintiff had the physical RFC to occasionally lift twenty pounds, frequently lift ten pounds, and could sit and/or stand for about six hours in an eight-hour workday.[97]  He stated, "The alleged severity and limiting effects from the impairments are not wholly supported."[98]   A reviewing

---

[97]     Tr. 218-25.

[98]     Tr. 223.

physician, Dr. Cremona, agreed that while Plaintiff had pain upon full knee flexion, she was able to bend eighty degrees and a light RFC remained appropriate.[99]

Four years later, in 2011, Dr. Durfor reviewed Dr. Daniel's report and determined that Plaintiff had the physical RFC to occasionally lift twenty pounds, frequently lift ten pounds, and both sit and/or stand for about six hours in an eight-hour workday.[100]  In making that finding, he referred to Plaintiff's date last insured, thus implying that his determination was for the relevant period and satisfying SSR 82-20.[101]

As the record reflects that three doctors reviewed the only medical record from the relevant period and agreed that Plaintiff had a light RFC as of the date last insured, the court finds that the ALJ did not violate SSR 82-20, and that remand for additional review is not appropriate.

Plaintiff alleges that the ALJ failed to adequately develop the record and that this error requires a remand.  The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relating to a claim for disability benefits.  Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000).  If the ALJ fails in this duty, he will not have sufficient facts before him to make a fully informed

---

[99]     Tr. 207.

[100]     Tr. 211-17.

[101]     Tr. 217.

decision and, consequently, the decision will not be supported by substantial evidence.  Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984).  A reviewing court may reverse the ALJ's unfavorable decision as not based on substantial evidence if the record shows that (1) the ALJ failed to fulfill his duty to adequately develop the record and (2) that the claimant was prejudiced thereby.  Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996).

In some cases, a consultative examination may be ordered to develop a full and fair record; however, such an examination is not required unless "the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." Pearson v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989)(quoting Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977)).  It is within the ALJ's discretion to require a consultative examination, and reversal of the ALJ's determination is appropriate if Plaintiff can show prejudice from the ALJ's failure to request additional evidence.  Id.; Newton, 209 F.3d at 458.  Prejudice can be established by "showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." Id.

Here, medical records predating the relevant period are no longer available and Plaintiff did not seek medical treatment during the relevant period.  A consultative examination during the relevant period concluded that Plaintiff retained the RFC for light work.

Plaintiff has not argued that there are other records available to be considered, and the court finds that there are none. Having a second consultative examination in 2012 would not have aided the ALJ in determining what Plaintiff's condition was in 2007. In light of these facts, the court concludes that the ALJ adequately developed the record.

Finally, Plaintiff argues that the ALJ failed to consider her non-exertional impairment of pain on her ability to perform certain occupations. Plaintiff told the consultative medical expert, Dr. Daniel, that she suffered from sharp low back pain that radiated into her neck and legs and "sometimes" the back pain prevented her from walking.[102] Nonetheless, she was usually able to walk a mile, touch her toes, and perform most of the activities of daily living.[103] She did not require an assistive device to ambulate.[104]

This is a case filed under Title II only and the relevant period ended December 31, 2007. Plaintiff failed to seek medical treatment for lumbar pain or knee pain during the relevant period. The ALJ determined that while Plaintiff's impairments could have been expected to produce some of the alleged symptoms, her testimony about the intensity, persistence and limited effects of the symptoms was not credible based on the same reasoning supporting his

---

[102]    Tr. 203.

[103]    Id.

[104]    Tr. 204.

25

determination that she did not suffer from a severe impairment, either singly or in combination.[105]  In light of the limited record in this case of any medical treatment, the court finds the decision of the ALJ to be supported by substantial evidence.

**C.**   **Defendant's Motion for Summary Judgment**

Defendant asserts in her response that the ALJ's decision should be affirmed because the ALJ properly determined that Plaintiff was not disabled during the relevant period of time.  The court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance of evidence.  See Carey, 230 F.3d at 135.

The court finds more than a scintilla of evidence in support of the ALJ's decision.  Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

---

[105]      Tr. 14.

## IV.   Conclusion

Based on the foregoing, Defendant's Cross-Motion for Summary Judgment (Doc. 11) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (Doc. 12) is **DENIED.**

**SIGNED** in Houston, Texas, this <u>1st</u> day of October, 2014.


Nancy K. Johnson
United States Magistrate Judge

27